IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS C. HOY,

               Plaintiff,

     v.

YAMHILL COUNTY, et al.,

               Defendants.

No. 3:13-cv-01098-HZ

OPINION & ORDER

Samantha J. Copeland
P.O. Box 19897
Portland, OR 97280

        Attorney for Plaintiff

JoLynn G. McCulloch
Joshua P. Stump
Harrang Long Gary Rudnick, PC
1001 SW Fifth Ave., 16th Floor
Portland, OR 97204

        Attorneys for Defendants

HERNÁNDEZ, District Judge:

In June of 2011, Plaintiff Thomas Hoy resigned from his position as Deputy Sheriff of the Yamhill County Sheriff's Office ("YCSO") amidst an internal investigation into whether he had made a false statement on a search warrant affidavit. He alleges that Defendants, including Yamhill County, Yamhill County Sheriff Jack Crabtree, County Counsel Rick Sanai, and Sergeant Steve Warden, violated his due process rights by not providing him a sufficient opportunity to clear his name, either before or after he resigned.

He also accuses Defendants of a variety of state law violations, including breach of contract, defamation, intentional interference with economic relations, negligence and retaliation. These claims arise from the release of Hoy's personnel file, including a 2009 performance review that reflected negatively on Hoy's reputation for truthfulness, and a report YCSO officials made regarding his separation to the Oregon state agency charged with certifying law enforcement officers. Defendants' actions, Hoy claims, have prevented him from gaining another position in law enforcement.

Currently before the Court is Defendants' motion for summary judgment on all claims. Regarding the federal claims, Hoy was not entitled to a name-clearing hearing because he fails to demonstrate Defendants made a stigmatizing statement about him in connection with his resignation. Hoy's state law claims also fail for a number of reasons. Defendants' motion for summary judgment is granted in its entirety.

## BACKGROUND

The following facts are undisputed, except where noted otherwise. Hoy worked as a patrol deputy for YCSO from March 24, 2008 until he resigned on June 1, 2011. Schmidt Declaration ("Decl.") Exhibit ("Ex.") 9, ECF No. 45-3, at 1, 55. Sgt. Warden supervised Hoy during his first year at YCSO, and on May 17, 2009, Sgt. Warden completed Hoy's first

performance evaluation. Sgt. Warden indicated on the evaluation form whether Hoy met

expectations, needed improvement, or was unsatisfactory in a variety of categories, and added

comments throughout. Id. at 1–9. Particularly relevant here is Hoy's "Unsatisfactory" rating in

the "Working Relationships" category, which was accompanied by Sgt. Warden's comment that

"[m]embers of [Hoy's] squad have been given the impression by Deputy Hoy that he is

deceptive and will do what he needs to make an arrest or work a case." Id. at 4.

      Captain Ken Summers and Defendant Sheriff Crabtree both reviewed and initialed the

evaluation. Id. at 7. When presented with the report, Hoy submitted a page of typewritten

comments agreeing, in large part, with its contents. Id. at 8. He did, however, take issue with

some unspecified portions of the evaluation: "There are a couple categories where I was marked

unsatisfactory where I feel it was not warranted. There are instances where I feel I was

misquoted and where my directions from supervisors were obviously conflicting." Id. Hoy

signed the evaluation on July 14, 2009, but he believed Sgt. Warden's criticism of his work was

based on personal animosity, not on his performance. Id.; Hoy Deposition ("Depo."), ECF No.

59-1, at 17. Hoy brought his concerns to Capt. Summers, who urged Hoy to focus on the future.

Hoy Depo., ECF No. 59-1, at 17. At that point, Hoy was no longer working under Sgt. Warden,

and was several months into his second evaluation period. Capt. Summers told Hoy that Sgt.

Warden's performance evaluation would be destroyed after Hoy received his second evaluation,

which Capt. Summers believed would be more positive. Id. at 17–18.

      Hoy's new supervisor, Sgt. Chris Ray, completed the second evaluation on May 13,

2010. Schmidt Decl. Ex. 9, ECF No. 45-3, at 11. The 2010 report was much more positive for

Hoy—he rated as "Meets" or "Exceeds Expectations" in eleven of thirteen categories, and

"Needs Improvement" in two. Id. at 12–14. Hoy again submitted written comments which, in

large part, concurred with the findings in the report. "I feel the subject matter is very accurate

and fair," he wrote. "For the two remaining categories that need improvement, I have no

complaints or rebuttal." Id. at 17.

After receiving his second performance evaluation, Hoy approached Capt. Summers

about the 2009 evaluation from Sgt. Warden. According to their agreement, Capt. Summers gave

Hoy the 2009 report and told him he could do whatever he wanted with it. Summers Depo., ECF

No. 45-2, at 21–22. At the time, Capt. Summers believed that was the only copy of Hoy's 2009

performance evaluation. Id. at 21. There was, in fact, another copy kept by YCSO

Administrative Support Program Manager Kellye Fetters. Id.

On October 26, 2010, the defense attorney in a criminal case, State v. Forbes, issued a

subpoena duces tecum to Sheriff Crabtree to appear as a witness and bring with him Hoy's

"entire internal affairs and disciplinary files and personnel file[.]" Answer to First Amd. Compl.

¶ 17. Defendant Rick Sanai, then-Yamhill County Counsel, filed motions to quash the subpoena

or, alternatively, for in camera review and a protective order on documents the presiding judge,

Yamhill County Circuit Court Judge Carroll Tichenor, ordered disclosed. Sanai Depo., ECF No.

45-2, at 5. After a hearing, Judge Tichenor ordered an in camera review of Hoy's personnel file,

and Sanai submitted the file maintained by the County's Human Resources Department. Id. at 8.

Judge Tichenor subsequently ordered the disclosure of portions of Hoy's 2009 performance

evaluation, including Sgt. Warden's comments about Hoy's reputation for veracity, subject to a

protective order. Id.; Schmidt Decl. Ex. 9, ECF No. 45-3, at 30.

In May 2011, Hoy prepared and signed a sworn affidavit for a search warrant before

Yamhill County Circuit Court Judge Ronald Stone. Hoy Depo., ECF No. 45-1, at 56; Schmidt

Decl. Ex. 9, ECF No. 45-3, at 45. The affidavit stated, in relevant part, that Hoy "received a call

from a reliable confidential informant stating he knew [the suspect] to be hiding at the Park Apartments #19 in the city of McMinnville within Yamhill County." Schmidt Decl. Ex. 9, ECF No. 45-3, at 46. Judge Stone issued the warrant, which Hoy used to arrest the suspect and others. Id. at 49–51.

Shortly after the arrests, concern circulated within YCSO about Hoy's affidavit—that Hoy's "confidential reliable informant" was merely an anonymous source who had previously provided Hoy reliable information, but was not approved under YCSO's policy for using confidential informants. Crabtree Depo., ECF No. 45-1, at 10. YCSO opened an internal investigation into whether Hoy made a false statement in the affidavit and misled Judge Stone as to the reliability of his information. Geist Depo., ECF No. 45-1, at 28.

As part of that investigation, Sergeants Warden and Russ Vandewettering conducted an interview of Hoy on June 1, 2011, with Detective Rich Geist present as union steward to provide Hoy advice and counsel. Hoy Depo., ECF No. 45-1, at 60; Warden Depo., ECF No. 45-2, at 41. At the beginning of the interview, Hoy was read his Miranda rights and given a Garrity warning. Id. Following the interview, the sergeants met with Capt. Summers, and conveyed their belief the investigation would reveal Hoy made a false statement in the affidavit. Summers Depo., ECF No. 45-2, at 25–26.

Faced with that information, Capt. Summers gave Hoy a choice. He could resign immediately, in which case the internal investigation would stop. Or he could continue as an employee, be placed on administrative leave while the YCSO completed its investigation, and face the resulting discipline, which could include termination, Department of Public Safety

Standards and Training (DPSST)[1] decertification, or even criminal charges. Geist Depo., ECF No. 45–1, at 30; Hoy Depo., ECF No. 45–1, at 62; Summers Depo., ECF No. 45-2, at 26–27. Summers told Hoy that if he resigned, the YCSO would not notify DPSST of the investigation. Hoy Depo., ECF No. 45-1, at 63–64. After discussing his options with union representatives, Hoy tendered his resignation through a short letter, approximately one hour after the interview concluded. Geist Depo., ECF No. 45-1, at 33–34. The following day, Hoy approached Sheriff Crabtree and attempted, unsuccessfully, to revoke his resignation. Hoy Decl., ECF No. 59-10, ¶¶ 32–33. YCSO abandoned the internal investigation a few days later. Schmidt Decl. Ex. 9, ECF No. 45-3, at 117.

On June 23, 2011, YCSO Administrative Manager Fetters prepared and faxed to DPSST Form F-4, which notifies the agency when public safety employees are hired, change status, or separate from employment. Under "Type of Separation," Fetters checked the box which stated "Resignation during investigation." Id. at 56. The following month, DPSST requested the investigation that led to Hoy's resignation, but eventually decided not to pursue revocation of Hoy's police officer certification. Id. at 116; Answer to First Am. Compl. ¶ 32.

Hoy's attorneys met with Sheriff Crabtree and Sanai on November 22, 2011, to discuss the revocation of his resignation and an opportunity to defend his reputation; at Mr. Sanai's request, Hoy did not attend. Dablow Decl., ECF No. 60, at ¶ 9. Following that meeting, Hoy's attorney sent a tort claim notice to the County, which it received on December 6, 2011. Sanai Decl., ECF No. 43, at ¶ 2. During the course of subsequent negotiations between the parties, Defendants offered Hoy the chance to make a statement about his resignation to the Yamhill County Board of Commissioners at one of its meetings in June of 2013. Schmidt Decl. Ex. 28,

---

[1] DPSST is the State of Oregon agency charged with training and certifying police, fire, corrections, parole, and probations personnel. State of Oregon, Department of Public Safety Standards and Training, OREGON.GOV, http://www.oregon.gov/DPSST/Pages/index.aspx (last visited Apr. 15, 2015).

ECF No. 45-3, at 57–62. Through his attorney, Hoy declined the offer. "[T]he County's proposal to allow Mr. Hoy to make a statement is not a hearing and simply inadequate." Id. at 57. "A meaningful hearing," she wrote, "would require more, including the opportunity to call and cross-examine witnesses (including the Sheriff), present evidence, and have a neutral decision-maker involved." Id. at 59

Sometime in 2013, the YCSO released Hoy's personnel file and the records for the internal investigation about the search warrant affidavit in response to a public records request from the Oregonian. Copeland Decl. Ex. 19, ECF No. 64, at 13. In 2014, after Hoy filed this suit, Crabtree, Sanai, and Fetters gave testimony in a criminal trial that led Yamhill County Circuit Court Judge John L. Collins to declare Hoy's personnel records to be "Brady" material. Plaintiff's Response ("Pl. Resp.") at 13.

Hoy then filed his complaint asserting claims under 42 U.S.C. § 1983 for violations of his constitutional rights, specifically that Defendants deprived him of his liberty interest under the Due Process Clause by failing to provide him a pre- or post-deprivation name clearing hearing. First Amd. Compl. ¶¶ 46–60. Hoy alleges Defendants further violated his federal rights by failing to properly maintain his personnel files, and by negligently retaining, training, and supervising YCSO employees. Id. at ¶¶ 61–79. He also brings a number of state law claims including breach of contract, promissory estoppel, defamation, intentional interference with economic relations and prospective economic relations, general negligence, and retaliation. Id. at ¶¶ 80–121. Defendants move for summary judgment on all claims.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

## DISCUSSION

### I.   Federal Claims

Hoy's brings his first claim for relief under 42 U.S.C. § 1983. First. Amd. Compl. at ¶¶ 46–60. That familiar statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation

was committed by a person acting under color of state law." Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

Hoy alleges his 1983 claim in three counts: 1) that Defendants violated his due process rights by failing to provide him either a pre- or post-termination name-clearing hearing; 2) that Defendants failed to "abide by Oregon laws and rules relating to . . . public records"; and 3) that Defendants "negligently breached" duties to Hoy relating to records retention, and employee training and supervision. First Amd. Compl. at ¶¶ 47, 50, 63, 74. Each claim is addressed in turn.

### a.  Name-Clearing Hearing

Hoy alleges that Defendants violated his Fourteenth Amendment right to due process by not offering him a name clearing hearing, either before or after he was terminated. First Amd. Compl. ¶¶ 46–60. Defendants move for summary judgment on this first count on multiple bases, including statute of limitations, waiver, qualified immunity, and that, even after construing all evidence in Hoy's favor, his claim fails as a matter of law. Defendants' Motion for Summary Judgment ("Defs. Mot.") at 12–21. The motion is granted regarding Hoy's claim for a pre-termination hearing because he does not allege a violation of his property interest, and his liberty interest was not implicated until after he was terminated. Defendant's motion regarding Hoy's claim for a post-termination hearing is also granted because Hoy has failed to produce evidence that any of the Defendants made a stigmatizing statement in connection with his termination.

### i.  Property Interest

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." More specifically, the state cannot deprive a person the freedom to engage in his chosen occupation without due process. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 572–73 (1972). An individual's

termination from public employment may implicate two distinct interests, a property interest and a liberty interest. Boggs v. Hoover, No. 09-cv-116-ST, 2009 WL 2447553, at *5 (D. Or. Aug. 6, 2009) (citing Roth, 408 U.S. at 576).

An individual with a vested right in continued employment through, for example, tenure or a collective bargaining agreement, has a property interest that prohibits summary dismissal without a pre-termination hearing. Boggs, 2009 WL 2447553, at *5 (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)); Chen v. City of Medina, No. C11-2119 TSZ, 2013 WL 392707, at *9-10 (W.D. Wash. Jan. 31, 2013) (citing Loudermill, 470 U.S. at 542; Roth, 408 U.S. at 578) (additional citations omitted).

Mr. Hoy alleges that Defendants deprived him of his "liberty interest in his reputation and his chosen occupation" but he does not allege a similar deprivation of a property interest. See First Amd. Compl. ¶¶ 46–60. He argues in his opposition to summary judgment that the "Court should construe his 1983 claims broadly to . . . includ[e] his liberty and property interests as Hoy alleges entitlement to both pre- and post-termination name clearing hearings." Pl. Resp. at 14. Hoy then states that his employment with YCSO is pursuant to a collective bargaining agreement. Id.

But Hoy's complaint is clear: the first paragraph states that he "alleges a deprivation of his liberty interest in violation of the Due Process Clause of the Fourteenth Amendment." Compl. ¶ 1. Throughout the complaint, all of the allegations related to his due process claim are based on a name-clearing hearing, not that he was deprived of a property interest in his employment. See, e.g. Compl. ¶ 42 ("Defendants had the authority to provide Plaintiff with a pre- or post-termination name-clearing hearing and their failure to do so was unconstitutional."); Compl. ¶ 51 ("Defendants' practice, policy and/or custom of denying name clearing hearings to

employees violated [Hoy's] constitutional rights."); Compl. ¶ 55 ("[E]ach Defendant personally participated in the deprivation of [Hoy's] liberty interest in his reputation and his chose occupation without providing due process of law . . . .").

Hoy does make one generic allegation that might be broadly construed to encompass a property interest: "Defendants had insufficient and inadequate procedural safeguards in place to protect Plaintiff's Fourteenth Amendment constitutional right." Compl. ¶ 52. But even if the Court were to assume that allegation was sufficient to raise the question whether Hoy's continued employment at YCSO was a property interest, he still does not allege sufficient facts to state such a claim.

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Miller v. Deschutes Valley Water Dist., 663 F. Supp. 2d. 1001, 1008 (quoting Roth, 408 U.S. at 577). A plaintiff claiming a right to property interest must "cite the statute or rule that confers upon him a property right in continued employment." Id. (citing Loudermill, 470 U.S. at 538–39). Hoy's complaint does not cite to the source of such a right; he does so in his response to Defendant's motion for summary judgment, but that is not the appropriate time to advance a new legal theory or a new factual basis for his claims. Patel v. City of Long Beach, 564 Fed. Appx. 881, 882 (9th Cir. 2014); see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292–93 (9th Cir. 2000); Hardin v. Wal-Mart Stores, Inc., No. CIV-F-08-0617-AWI, 2010 WL 4924772, at *2 (E.D. Cal. Nov. 29, 2010). Hoy cannot advance a new factual or legal theory at summary judgment because it is the complaint that guides the parties' discovery and puts the defendant on notice of the evidence it needs to defend against the plaintiff's allegations. Patel, 564 Fed. Appx. at 882 (citing Coleman, 232 F.3d at 1292).

Moreover, the mere existence of an employment contract does not necessarily give rise to a due process claim based on a property interest every time an employee is terminated. See Vanelli v.Reynolds School Dist. No. 7, 667 F.2d 773, 777 (9th Cir. 1982) ("It is well established that an employee dismissed during the term of a one-year contract and in breach of its provisions has a legitimate claim for entitlement and a property interest in continued employment.") (emphasis added). Hoy does not mention that his termination or resignation was in breach of the collective bargaining agreement.

Accordingly, the Court will only consider what Hoy alleges in his complaint: that Defendants' actions violated his liberty interest.

### ii.    Liberty Interest

A terminated public employee has a liberty interest in procedural due process when the employer publicly discloses stigmatizing information about the reasons for termination. Barton v. City of Portland, 242 F.Supp.2d 893, 901 (D. Or. 2002) (citing Brady v. Gebbie, 859 F.2d 1543, 1552 (9th Cir. 1988)). To establish a liberty interest violation, a plaintiff must show 1) some public disclosure of a stigmatizing statement; 2) the accuracy of the statement is contested; and 3) the statement is made in connection with the termination of employment. Fetsch v. City of Roseburg, No. 6:11-cv-6343-TC, 2012 WL 6742665, at *5 (D. Or. Dec. 31, 2012) (citing Mustafa v. Clark County School Dist., 157 F.3d 1169, 1179 (9th Cir. 1998)) (additional citations omitted). A statement that impairs a terminated employee's reputation for honesty or morality is stigmatizing. Brady, 859 F.2d at 1559. When a public employee's liberty interest is implicated by a stigmatizing statement, the employee must have an opportunity to refute the charge or clear his or her name at a hearing. Barton, 242 F.Supp.2d at 901 (citing Codd v. Velger, 429 U.S. 624, 627 (1977)).

OPINION & ORDER - 12

Hoy alleges generally that Defendants "publish[ed] stigmatizing statements" but does not specify what the statement or statements were, or when, where, by whom or to whom they were made. See First Amd. Compl. at ¶¶ 46–60. Hoy's complaint states that "word spread among criminal defense attorneys" about Hoy's reputation, but he does not allege any of the Defendants were the source of that information. Id. at ¶ 40. In his Response, Hoy alleges that

> Defendants made false, stigmatizing statements regarding his veracity and honesty in connection with his termination to the following third parties: DPSST; Yamhill County District Attorney's Office; outside law enforcement agencies; the Yamhill County Employees Association; criminal defense attorneys; and the "inevitable" release of Hoy's personnel records and the IA file and DVD to the Oregonian.

Pl. Resp. at 18 (footnotes omitted). But what are the statements? Hoy's vague pleading and briefing leaves the Court guessing.

Presumably, Hoy takes issue with the publication of Sgt. Warden's statements about Hoy's reputation for veracity in his 2009 performance evaluation. Although Hoy does not develop the argument, it is well-settled Ninth Circuit law that "placement of stigmatizing information in an employee's personnel file constitutes publication when the governing state law classifies an employee's personnel file as a public record." Cox v. Roskelley, 359 F.3d 1105, 1111–12 (9th Cir. 2004). Assuming Hoy's personnel file was a public record not subject to an exception from disclosure under applicable Oregon law, see ORS 192.005(5); 192.501(12), Hoy still cannot show a liberty interest violation because Warden's statement was not connected with Hoy's termination.

A stigmatizing statement is connected to termination when "defamatory statements are so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." Kramer v. S. Oregon Univ., No. 1:13-cv-00340-PA, 2014 WL 6810767, at *7 (D. Or. Dec. 1, 2014) (quoting Campanelli v. Bockrath, 100 F.3d 1476, 1482 (9th Cir. 1996)).

The statement and the discharge must share "some temporal nexus" to be considered "closely related." Id. (citing Campanelli, 100 F.3d at 1483; Tibbets v. Kulongoski, 567 F.3d 529, 537 (9th Cir. 2009)).

The performance evaluation occurred in May of 2009, more than two years before Hoy resigned from the YCSO in June of 2011. Although there is no bright-line rule for analyzing the temporal nexus, two events approximately twenty-five months apart are not sufficiently connected in time to create a nexus under Campenelli and its progeny. See Tibbets, 567 F.3d at 538 (holding that a sixteen-month span between termination and a press release which publicized the stigmatizing statement at issue severed the "temporal nexus"). Moreover, Hoy's resignation was based on the internal investigation into whether he falsified an affidavit; it was not in any way related to his 2009 performance evaluation. The two events are not sufficiently connected to trigger Hoy's right to a name-clearing hearing.

Hoy's claim for a hearing based on Defendants' release of his personnel records and "related investigation materials to a representative of the Oregonian" in May of 2013 fails for similar reasons. First Amd. Compl. ¶ 41. Publication of Hoy's records nearly two years after he was terminated is too remote to create the temporal nexus necessary to trigger a right to a name-clearing hearing. Tibbets, 567 F.3d at 538.

The only evidence Hoy has produced to support his allegation that Defendants made statements about his veracity to "outside law enforcement agencies" is his own testimony that "the background investigator for the Salem Police Department told Hoy that a YCSO Sergeant expressly advised him not to hire Hoy and made negative statements regarding Hoy's credibility." Pl. Resp. at 9–10; Hoy Decl. ECF No. 59-10, at ¶ 35. That statement is inadmissible hearsay in relation to Hoy's allegations because it is an out-of-court statement offered for the

truth of the matter asserted—that someone from YCSO made a statement to other law enforcement agencies about Hoy's reputation for truthfulness. Accordingly, Hoy cannot rely on it to raise an issue of material fact sufficient to survive summary judgment. See Chao v. Westside Drywall, Inc., 709 F.Supp.2d 1037, 1048–50 (D. Or. 2010) (rejecting as inadmissible hearsay evidence offered in opposition to motion for summary judgment).

The only other statement the Court can guess as forming the basis for Hoy's claims is that Defendants reported to DPSST that Hoy's employment with YCSO had ended and categorized the separation as "Resignation during investigation." Schmidt Decl. Ex. 9, ECF No. 45-3, at 59. Hoy does not dispute that "Resignation during investigation" was the most accurate box available on the form to describe the circumstances of his resignation. He is not entitled to a hearing based on that statement if he does not contest its accuracy. Codd, 429 U.S. at 627–28 (explaining that "if [the employee] does not challenge the substantial truth of the material in question, no hearing would afford a promise" of clearing his or her name).

The remaining accusations, that Defendants made a statement to the Yamhill County District Attorney's Office or to the Yamhill County Employees Association, are unsupported by the portions of the record Hoy cites. See Pl. Resp. at 18. The Court found an email from Sherriff Crabtree to District Attorney Brad Berry on May 4, 2014, in which Crabtree stated that Hoy's recent deposition testimony about the search warrant affidavit changed Crabtree's mind from believing Hoy had made a "grave mistake to an opinion that he in fact falsified a sworn document." Copeland Decl. Ex. L, ECF No. 59-12, at 1. But that statement is almost three years removed from Hoy's resignation, which, again, is simply too remote in time to support the temporal nexus required trigger his right to a name-clearing hearing. See Tibbets, 567 F.3d at

538; <u>Campanelli</u>, 100 F.3d at 1483 ("At some point, defamatory statements may become too remote in time from the termination to be considered made 'in the course of the termination'").

And even if Hoy could show that he was entitled to a name-clearing hearing, Defendants offered him the opportunity to give a statement about his resignation at a public meeting of the Yamhill County Board of Commissioners in June 2013. Schmidt Decl. Ex. 28, ECF No. 45-3, at 57–62. Through his counsel, Hoy declined the offer, insisting that a "meaningful hearing would require more, including the opportunity to call and cross-examine witnesses (including the Sheriff), present evidence, and have a neutral decision-maker." <u>Id.</u> at 59.

The purpose of a name-clearing hearing is simply that—"to provide the person an opportunity to clear his name." <u>Codd</u>, 429 U.S. at 627. Due process guarantees only "an opportunity to be heard at a meaningful time and in a meaningful manner." <u>Tibbetts v. State Acc. Ins. Fund Corp.</u>, No. CIV. 06-503-AC, 2008 WL 4144441, at *6 (D. Or. Sept. 4, 2008) (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976). Despite Hoy's contentions, there is no Ninth Circuit case which requires a name-clearing hearing include the formal, trial-like procedures he requested. <u>See Vanelli</u>, 667 F.2d at 780 (explaining the panel did "not reach the question whether under these [post-termination] circumstances there is necessarily a right to cross-examine . . . witnesses."); <u>see also</u> <u>Chilingirian v. Boris</u>, 882 F.2d 200, 205 (6th Cir. 1989) (holding that a name-clearing hearing for a terminated city attorney satisfied due process even though he was not allowed to cross-examine witnesses, because he had "ample opportunity to refute the charges against him.").

In sum, Hoy has failed to show he was entitled to a name-clearing hearing based on the Defendants' alleged stigmatizing statements. Some of the statements Hoy takes issue with were too far in time from his resignation to trigger his right to a name-clearing hearing. Other alleged

OPINION & ORDER - 16

statements are either unsupported by the record or not sufficiently supported with admissible evidence to survive summary judgment. Hoy does not dispute that he resigned during an investigation, which precludes any right to a name-clearing hearing based on that statement or statements. And finally, Defendants offered, but Hoy declined, the opportunity to clear his name at a public hearing. Therefore, Defendants' motion for summary judgment on Count I of Hoy's first claim for relief is granted.

### b. Personnel Records

Hoy's second count under section 1983 alleges that Defendants "had a practice, policy and/or custom of failing to abide by Oregon laws and rules relating to the maintenance of employee's personnel records and/or public records laws . . . ." First Amd. Compl. at ¶ 62. It is well-settled, however, that "state law violations do not, on their own, give rise to liability under section 1983." Moreland v. Las Vegas Metro. Police Dept., 159 F.3d 365, 371 (9th Cir. 1998) (citation omitted); see also Enriquez v. David Douglas Sch. Dist., No. 09-cv-724-HU, 2010 WL 4363424, at *4 (D. Or. Oct. 27, 2010) (citing Canell v. Oregon Dept. of Justice, 811 F.Supp. 546, 550 (D. Or. 1983)). Even if Hoy's allegation is true, Defendants' failure to follow Oregon state law regarding public records retention does not give rise to a cognizable 1983 claim. Accordingly, Defendants motion for summary judgment on Count II of Hoy's first claim for relief is granted.

### c. Negligent Retention, Training, Selection, and Supervision

Hoy's third count under Section 1983 asserts that Defendants negligently breached a long list of duties allegedly owed to him. First Amd. Compl. at ¶ 74a-j. For example, Hoy alleges Defendants were negligent in "[f]ailing to properly train employees regarding personnel records, performance review, record retention . . . and failing to implement[,] establish[,] and enforce

proper procedures and practices under Oregon law . . . ." Id. at ¶ 74a. First, Hoy's claims in Count III are based on alleged violations of state law; they do not arise under federal law and thus cannot form the basis for a section 1983 claim. Moreland, 159 F.3d at 371. Second, the Due Process Clause of the Fourteenth Amendment is "simply not implicated by a *negligent* act of an official causing unintended loss or injury to life, liberty, property." DeBiaso v. Spitz, 957 F.Supp.2d 1213, 1224 (D. Or. 2013) (quoting Daniels v. Williams, 474 U.S. 327, 327, 330–31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("the protections of the Due Process Clause, whether procedural or substantive are just not triggered by lack of due care")). Defendants' motion for summary judgment on Count III of Hoy's first claim for relief is granted accordingly.

## II. State Law Claims

Hoy also asserts a number of state law claims, including breach of contract, promissory estoppel, defamation, intentional inference with economic relations, negligence, and retaliation. First Amd. Compl. at ¶¶ 19–28. Defendants request that, if Hoy's federal claims are dismissed, the Court should decline to exercise its supplemental jurisdiction over Hoy's state law claims. Defs. Mot. at 24. Hoy opposes the dismissal of those claims on jurisdictional grounds. Pl. Resp. at 30–31. After considering the principles of judicial economy, convenience, fairness, and comity, the Court exercises its discretion to retain jurisdiction over Hoy's state law claims.

A federal district court has supplemental jurisdiction over state law claims so related to the federal issues that they form the same case or controversy. 28 U.S.C § 1367(a). The court has discretion to decline jurisdiction over supplemental claims under the conditions set out in 28 U.S.C. § 1367(c). Acri v. Varian Associates, Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc). The decision to decline supplemental jurisdiction is informed by the "Gibbs values of economy,

convenience, fairness, and comity." Id. at 1001 (citing Allen v. City of Los Angeles, 92 F.3d 842, 846 (9th Cir. 1996); Executive Software N. Am. v. United State Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)); see also United Mine Workers v. Gibbs, 383 U.S. 715, 725–26 (1966).

Each factor favors maintaining jurisdiction over Hoy's state law claims in this case. Requiring Hoy re-file his state law claims would cause unnecessary delay—this case is almost two years old—and lead to an inefficient replication of pleadings and discovery in state court. Hoy has had numerous opportunities to make his case before this Court, including the unusual step of allowing an amended complaint after Defendants filed their motion for summary judgment back in September of 2014. Moreover, the court has expended significant judicial resources hearing oral argument, resolving discovery disputes, and analyzing the merits of Hoy's state law claims. Retaining jurisdiction would not offend principles of comity because Hoy's remaining state law claims require a straight-forward application of Oregon law. Aloha Dog & Cat Hosp., P.C. v. Standard Ret. Servs., Inc., No. 08-cv-927-PK, 2011 WL 2470104, at *2 (D. Or. May 10, 2011) report and recommendation adopted, No. 08-cv-927-PK, 2011 WL 2470088 (D. Or. June 20, 2011). And regarding fairness and convenience, the Court is reluctant to send this case back to state court and generate additional costs for both parties when Hoy's state law claims, as explained below, fail as a matter of law.

The Court, therefore, retains jurisdiction over Hoy's state law claims.

### a.  Breach of Contract & Promissory Estoppel

Hoy alleges that Defendants breached a contract with him by 1) failing to remove the 2009 performance evaluation from his personnel file, 2) publishing his personnel records, and 3) reporting to DPSST that he resigned under investigation for false swearing. First Amd. Compl. ¶¶ 80–83. Essentially, Hoy claims he and Capt. Summers reached an agreement that, in exchange

for Hoy's resignation and relinquishment of the right to contest the underlying allegation, the County would 1) destroy his 2009 performance evaluation, and 2) not report the search warrant investigation to DPSST. That agreement, however, is unenforceable because the County was under a legal obligation to retain Hoy's personnel records, and to report his resignation and the reason for it to DPSST. Stuckart Lumbar Co. v. Employee Benefits Ins. Co., Inc., 555 F.Supp. 22, 24 (D. Or. 1982) ("Courts refuse to aid one who complains than an illegal promise has not been performed.") (citing Hendrix v. McKee, 281 Or. 123, 128, 575 P.2d 134, 137 (1978)).

The County could not have destroyed Hoy's evaluation because it was a public record. A "public record" under Oregon law includes

> any information that a) is prepared, owned, used, or retained by a state agency or political subdivision; b) relates to an activity, transaction or function of a state agency or political subdivision; and c) is necessary to satisfy the fiscal, legal, administrative, or historical policies, requirements or needs of the state agency or political subdivision.

ORS 192.005(5). A county is required to maintain personnel records, including "performance appraisal evaluations," for at least six years after the employee separates. OAR. 166-150-0160(10).

Hoy asserts the evaluation was not a public record because there was no discipline or change in Hoy's employment status, Warden's statements about Hoy's reputation for veracity were unsubstantiated, and there is "no definition of 'evaluation' in the OAR's (sic) relating to the retention of police 'Employee Personnel Records.'" Pl. Resp. at 26–27. In support of these arguments, Hoy submitted the declaration of Mr. Larry Kanzler, an expert in police personnel records and internal investigation. Kanzler Decl., ECF No. 62, at ¶ 12. But the question whether Hoy's evaluation is a "public record" is a legal one that requires the Court to engage in statutory and regulatory interpretation. It is not, as Hoy argues, a "factual question" that depends on

"industry practices" or Mr. Kanzler's opinion. Pl. Resp. at 27. The YCSO prepared, used, and retained Hoy's evaluation. An employee evaluation is obviously related to the YCSO's activities and function. The YCSO was, therefore, required to keep the evaluation to comply with its obligations under Oregon's public records retention laws and regulations. No one at the YCSO could have legally destroyed it until the end of retention period, and any agreement to do so is unenforceable.

Finally, Oregon regulations required Defendants to report Hoy's separation from employment to DPSST. OAR 259-008-0020(2) ("Whenever a public safety officer resigns, retires, or terminates employment . . . the agency must report this information to Standards and Certification on a Personnel Action Report within 10 business days of the action."). There is no dispute that "Resignation during investigation" was the most accurate box to check on the DPSST Personnel Action Report Form F-4. Again, any agreement not to report accurately to DPSST was illegal and unenforceable.

Hoy's claims based on promissory estoppel are equally unavailing. Promissory estoppel is an equitable remedy that applies where the promiser makes a promise that is reasonably expected to induce action or forbearance from the other party, the other party does in fact rely on the promise, and "injustice can be avoided only by enforcement of the promise." Cocchiara v. Lithia Motors, Inc., 353 Or. 282, 291, 297 P.3d 1277, 1283 (2013) (quoting Restatement (Second) of Contracts, § 90(1) (1981)). The Court will not exercise its equitable jurisdiction to enforce an illegal promise.

Accordingly, Defendants motion for summary judgment on Hoy's second and third claims for relief is granted.

### b. Defamation

Hoy's fourth claim for relief alleges Sgt. Warden made and published defamatory statements about Hoy, including Warden's statements in the 2009 performance evaluation and "dispersing or reporting false or contested information to outside law enforcement agencies, criminal defense attorneys, and other third parties and individuals." First Amd. Compl. at ¶ 89. Because Sgt. Warden made the statements while performing his duties with the YCSO, he is entitled to absolute privilege against Hoy's defamation claim, and Defendants' motion for summary judgment on this claim is granted.

"The elements of a claim for defamation are: (1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm." Nat'l Union Fire Ins. Co. of Pittsburgh Pennsylvania v. Starplex Corp., 220 Or. App. 560, 584, 188 P.3d 332, 347 (2008) (citation omitted).

There is no dispute that Warden made and published the negative comments about Hoy in the 2009 evaluation. Hoy does not, however, cite to any admissible evidence in the record that Warden made defamatory statements to any of the other alleged parties. Hoy asserts that "the background investigator for the Salem Police Department told Hoy that a YCSO Sergeant expressly advised him not to hire Hoy and made negative statements regarding Hoy's credibility." Pl. Resp. at 9–10; Hoy Decl. ECF No. 59-10, at ¶ 35. That statement is hearsay not within any exception and is therefore inadmissible at summary judgment. Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 851 (9th Cir. 1990) (affirming district court's grant of summary judgment on defamation claim supported only by hearsay evidence).

Hoy does not offer any factual support for the allegation that Sgt. Warden, or the other Defendants for that matter, made statements to criminal defense attorneys. Hoy's briefing cites to two pages of Crabtree's deposition, but those pages contain no reference to a statement made to any criminal defense attorney. Pl. Resp. at 18, n.94. A footnote near the end of Hoy's response only repeats the general allegation without any factual support from the record. See Pl. Resp. at 35, n.179. The only other mention the Court can find of any statements made to a criminal defense attorney is a letter from a district attorney stating that Mr. Hoy's personnel records were not "Brady material" and they would "not . . . be made available as a matter of routine discovery." Id. at 9. To the extent Hoy takes issue with any of the Defendants offering testimony in open court about his reputation for veracity, those statements are absolutely privileged, and thus cannot form the basis of tort liability. Kraemer v. Harding, 159 Or. App. 90, 106, 976 P.2d 1160, 1171 (1999); Miller v. C.C. Meisel Co., Inc., 183 Or. App. 148, 169 n.14, 51 P.3d 650, 663 (2002) (citing Pitts v. King, 141 Or. 23, 15 P.2d 379 (1932)).

That leaves Sgt. Warden's statements on Hoy's 2009 performance evaluation. Defendants argue that Hoy failed to give adequate, timely notice under the Oregon Tort Claims Act ("OTCA") of his intent to file a claim against Sgt. Warden for defamation, and that the claim is barred by Oregon's one-year statute of limitation for defamation actions. Defs. Mot. at 26–27. They assert the claim accrued either when Warden first wrote the alleged defamatory statement in 2009, or when the performance evaluation was published in January of 2011 after Judge Tichenor ordered it be disclosed to defense counsel in the State v. Forbes case. Id. at 26–27; Defs. Reply at 10–11. Hoy attempts to avoid these defenses by arguing the limitations and OTCA notification period should be equitably tolled because he reasonably relied on Defendants' assurances that his personnel records would either be destroyed or withheld from

public release. Pl. Resp. at 16–17. Even assuming, without deciding, that Hoy provided adequate notice of his claims and that they are not time-barred, his claims still fail as a matter of law.

Under Oregon law, "executive officers of public entities have an absolute privilege that, in some circumstances, acts as a complete bar to a claim for defamation." Chamberlain v. City of Portland, 184 Or. App. 487, 490, 56 P.3d 497, 499 (2002) (citing DeLong v. Yu Enterprises, Inc., 334 Or. 166, 47 P.3d 8 (2002)) (additional citation omitted). That privilege only extends to executive officials, including sworn police officers, who publish the defamatory statement in the performance of his or her official duties. Id. (citing Shearer v. Lambert, 274 Or. 449, 455, 547 P.2d 98, 101–102 (1976).

Hoy argues that "whether Warden's action were required or authorized [and] thus within the scope of his employment is a question of fact for the jury." Pl. Resp. at 36. But no reasonable fact-finder could conclude on the evidence Hoy has provided that Sgt. Warden's conduct fell outside the scope of his employment under Oregon law. The test to determine whether an employee acted within the scope of employment is 1) whether the act occurred substantially within the time and space limits authorized by the employment, 2) that the employee was motivated, at least in part, by a purpose to serve the employer, and 3) the acts were the kind the employee was hired to perform. McGanty v. Staudenraus, 321 Or. 532, 539, 901 P.2d 841, 846–47 (citation omitted). The evidence in the record shows Warden was authorized and required to prepare the performance evaluation as part of his duties as Hoy's supervisor. Warden Decl., ECF No. 72, at 2. He completed the evaluation form at YCSO during regular work hours. Id. Hoy even admits that "Warden was responsible for completing my first Performance Appraisal . . . ." Hoy Decl. ECF No. 59-10, at 3. Warden's conduct falls squarely within the first and third elements.

Hoy argues that Warden's actions were outside the scope of employment because he was motivated by some personal animus towards Hoy. Pl. Resp. at 37. Even assuming that allegation is true, Oregon law is clear that so long as the actor's actions are within the scope of his authority and are undertaken at least in part to further the employer's interests, "it is immaterial that the actor has additional motives—even improper ones." Mannex Corp. v. Bruns, 250 Or. App. 50, 54–55, 279 P.3d 278, 282 (2012) (citing Sims v. Software Solutions Unlimited, Inc., 148 Or. App. 358, 364–65, 939 P.2d 654, 658, rev. den., 326 Or. 57, 944 P.2d 947 (1997)). Hoy's own testimony forecloses the argument that Warden was acting solely for his own benefit. Hoy claims to have had a conversation with Warden about the performance evaluation during which

> Sergeant Steve Warden looked me right in the eye and face to face and said, "This particular note was for our eyes only. This was an attempt to get your attention. I may have used a" – I think it was a hatchet to swat a fly, I think is what he said, or a two-by-four to swat a fly or something similar, but it was meant solely as an attention getter.

Hoy Depo., ECF No. 56-1, at 30. Similarly, Hoy testified that Warden later "dismissed the validity of that particular statement as it pertains to my veracity . . . and my integrity, and dismissed it as simply a training tool." Id. at 32. Assuming those statements are admissible, either as an exception to hearsay to show Warden's motive or state or mind, or as non-hearsay, they tend to show that Warden's evaluation, while perhaps heavy-handed, was motivated at least in part by a desire to coach Hoy on his job performance.

The only other piece of admissible evidence Hoy provides regarding Warden's motives is a portion of Defendant Sanai's deposition in which he testifies that he may "have indicated to [Hoy] that Steve Warden was too hard on him. I know Sgt. Warden to be on the stricter end of the scale as sergeants go. It seemed to me that Sgt. Warden did not like or have a high opinion of [Hoy]." Sanai Depo., ECF No. 59-15, at 9. Even construing that evidence in Hoy's favor, as the

Court is required to do here, it does not raise a question of material fact whether Warden was motivated *solely* by personal animus against Hoy.

The evidence shows Warden completed the performance evaluation as part of his duties for the YCSO. And while Warden may have had mixed motives in analyzing Hoy's work, that is not sufficient under Oregon law to overcome the defense of absolute privilege. Accordingly, the Court finds Warden's statements on the evaluation about Hoy's reputation for truthfulness were privileged, and Defendants' motion for summary judgment on this claim is granted.

### c. Intentional Interference with Economic & Prospective Economic Relations

Hoy's claims for interference with business relations take two forms. First, he alleges Warden's statements on his 2009 evaluation interfered with his then-existing economic relationship with the YCSO. First Amd. Compl. at ¶ 97 Second, he claims that all Defendants, by "dispers[ing] or report[ing] false or contested information to various third parties, hampered his prospective economic relations because he cannot gain employment in law enforcement." First Amd. Compl. at ¶¶ 95–108. Defendants' motion for summary judgment on both claims is granted because Hoy has not produced sufficient evidence to raise a factual dispute over several required elements.

Under Oregon law, a plaintiff alleging intentional interference with economic relations must show 1) a business relationship, which could include an existing contract or a prospective economic advantage, 2) intentional interference with that relationship, 3) by a third party, 4) through improper means or with improper purpose, 5) causation, and 6) damages. McGanty, 321 Or. at 535, 901 P.2d at 844.

A supervisor acting within the scope of employment cannot be held liable for interfering with the relationship between an employer and an employee because the third party element is

lacking. See id. at 537–38. The question here is the same as it was for Hoy's defamation claim: was Sgt. Warden acting within the scope of employment when he completed the 2009 performance evaluation? And the answer here is the same—Hoy has not produced evidence sufficient to raise a question of material fact about whether Warden was motivated solely by an improper motive. See Mannex Corp., 250 Or. App. at 54-55, 279 P.3d at 282.

Even if Hoy could show that Warden was acting outside the scope of employment, his claim for intentional interference would still fail because Hoy cannot show the required causal connection between Warden's statements on the 2009 evaluation and Hoy's resignation two years later. Hoy resigned in the midst of an internal investigation aimed at determining whether he had made a false statement in an affidavit. Pl. Resp. at 6–7. Hoy does not allege or point to any evidence that the 2009 performance evaluation had any bearing on the YCSO internal investigation into his affidavit or his subsequent resignation.

The other Defendants are also entitled to summary judgment on Hoy's claims for intentional interference with prospective economic relations because Hoy fails to offer any evidence they acted with an improper purpose. Defendants were under a legal duty to report Hoy's separation and the reason for it to DPSST, and to release his performance evaluation pursuant to Judge Tichenor's court order. Hoy does not offer any argument that Defendants' production of Hoy's files responsive to the Oregonian's public record request in early 2013 was done for an improper purpose, and the Court is skeptical that any such argument would prevail. See In Def. of Animals v. Oregon Health Sciences Univ., 199 Or. App. 160, 168, 112 P.3d 336, 343 (2005) (citations omitted) (explaining Oregon's "strong and enduring policy that public records and governmental activities be open to the public" and that disclosure of such records is the rule, subject to narrowly construed statutory exemptions). As mentioned previously, any

testimony the Defendants offered in court about Hoy's reputation for veracity is protected by absolute privilege and cannot be the basis for tort liability. <u>Kraemer</u>, 159 Or. App. at 106, 976 P.2d at 1171 (1999); <u>Miller</u>, 183 Or. App. at 169 n.14, 51 P.3d at 663 (2002).

Hoy does not mention as a basis for this claim the May 2014 email from Sheriff Crabtree to District Attorney Berry in which Crabtree claims Hoy's deposition testimony changed his mind from believing Hoy had made a "grave mistake to an opinion that he in fact falsified a sworn document." Copeland Decl. Ex. L, ECF No. 59-12, at 1. But even if he had, the Court finds that the evidence suggests Crabtree was motivated at least in part by a desire to serve his employer because he was responding to an inquiry regarding possible Brady issues with Hoy, which is presumably one of his duties as County Sheriff. <u>Id.</u> Again, Hoy does not develop the argument, and the Court is reluctant to offer any further analysis.

Finally, Defendants correctly point out that Hoy has not put on any evidence of a valid business expectancy that could form the basis of his claim. Defs. Reply at 14.

Because Hoy has failed to produce evidence sufficient to raise an issue of material fact as to several elements of his claim of intentional interference, Defendants motion for summary judgment on Hoy's fifth claim is granted.

### d. Negligence

Hoy's sixth claim is for negligence. He alleges Defendants breached their duty of care in the following ways:

- Failing to train employees regarding personnel records and records retention;
- Failing to establish and enforce policies to protect County employee's constitutional and statutory rights;
- Failing to monitor, investigate or discipline employees, including Warden, for misuse of position and authority;
- Failing to properly monitor, investigate, train and discipline employees, including Fetters, in connection with personnel records and DPSST reporting;

- Failing to review or revise the policies governing the actions, authority and powers of Defendants and the County;
- Failing to provide Hoy with a timely, meaningful name-clearing hearing;
- Failing to protect Hoy's personnel records from publication;
- Failing to take reasonable care in selecting, retaining, training and supervising employees, including Warden; and
- Despite knowledge of Warden's demonstrated "personality conflict" with Hoy, allowing Warden to be involved in the investigation when it was reasonably foreseeable that he posed an unreasonable risk of harm to Plaintiff.

First Amd. Compl. ¶ 74. Hoy alleges he suffered economic and non-economic damages, but he does not allege any physical injury or special relationship. See id. at ¶¶ 74–79. Without such an allegation, his negligence claim fails as a matter of law.

The general rule for negligence under Oregon law is that the plaintiff must allege actual, physical harm. Lowe v. Philip Morris USA, Inc., 207 Or. App. 532, 545, 142 P.3d 1079, 1086 (2006). There are two exceptions to this general rule, though both require the plaintiff to make a showing of some heightened duty or special relationship. First, a plaintiff can recover for purely economic loss without attendant physical injury if the negligent actor had a special, heightened duty beyond the common law duty to exercise reasonable care to prevent foreseeable harm. Id. at 552–53 (citing Oregon Steel Mills, Inc. v. Cooper Lybrand, LLP, 336 Or. 329, 340–42, 83 P.3d 322, 327–28 (2004). Such a duty can arise from a statute or from a "special relationship" between the parties. Bell v. Pub. Employees Ret. Bd., 239 Or. App. 239, 245–47 P.3d 319, 323 (2010) (citations omitted). Second, a plaintiff can recover for negligent infliction of emotional distress in the absence of physical injury if the "defendant's conduct infringed on some legally protected interest apart from causing the claimed distress, even when that conduct was only negligent." Hammond v. Cent. Lane Commc'ns Ctr., 312 Or. 17, 23, 816 P.2d 593, 596 (1991).

Hoy does not allege any special duty or relationship in his First Amended Complaint. See First Amd. Complaint at ¶¶ 109–114. He attempts to advance breach of contract as a source of

heightened duty, Pl. Resp. at 38, but as previously explained, there was no enforceable contract between the parties. Hoy claims his reliance on Defendants' "promises and assurances create[d] a special relationship akin to a fiduciary." Id. But even a broad reading of Hoy's argument does not save it. A "special relationship" under Oregon law arises where

> (1) [o]ne party relinquishes control over matters, usually financial, and entrusts them to the other party; (2) [t]he party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) [t]he relationship either is, or resembles, other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship.

Bell, 239 Or. App. at 249–50, 247 P.3d at 326 (internal citations omitted). Arguably, Hoy's reliance on promises made to him about the destruction or disclosure of his 2009 evaluation could satisfy the first element. But Hoy does not advance that theory and, in any event, he fails to explain how his relationships with Sgt. Warden, Capt. Summers, and the YCSO otherwise meet the remaining criteria of the test.

Hoy offers no other source of special duty or a legally protected interest other than a vague reference to "statutory laws and duties" and to repeat his accusation that Defendants violated his constitutional rights. Pl. Resp. at 37–38. Without a more specific allegation about the source of heightened duty or a special relationship, Hoy's negligence claim fails as a matter of law, and Defendants' motion for summary judgment on Hoy's sixth claim for relief is granted.

### e.   Retaliation

Finally, Hoy asserts that Defendants retaliated against him after "his good faith opposition to [Defendants'] unlawful employment practices and his involvement in filing this civil proceeding." First Amd. Compl. at ¶116. After his termination on June 1, 2011, Hoy notified Defendants in November 2011 of his intent to bring tort claims against them; he then

filed this suit in July of 2013. Hoy alleges that Defendants subsequently retaliated against him by 1) providing testimony under oath that was inconsistent with prior statements made to him, and 2) making voluntary statements to members of the criminal defense bar. Id. at ¶¶ 116–121.

Hoy cites ORS 659A.230 as the source of his claim. Id. ¶ 119. That section provides that "[i]t is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee . . . for the reason that the employee . . . has in good faith brought a civil proceeding against an employer . . . ." ORS § 659A.230.

Defendants counter that the alleged retaliatory actions occurred after Hoy was no longer a YCSO employee, and accordingly, the protections of the statute no longer apply to him. Defs. Supplemental Motion for Summary Judgment ("Defs. Supp. Mot.") at 6–7. There does not appear to be an Oregon case addressing whether an employer can be liable under ORS 659A.230 if the alleged retaliatory act occurred after the employment relationship ended. Oregon courts and federal courts applying Oregon law have consistently looked to federal case law interpreting Title VII of the Civil Rights Act for guidance in interpreting the employment discrimination provisions of ORS 659A. See, e.g., Portland State Univ. Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ., 352 Or. 697, 711, 291 P.3d 658, 666 (2012); Briede v. 24 Hour Fitness, USA, Inc., No. 10-cv-649-HA, 2010 WL 4236929, at *3 (D. Or. Oct. 21, 2010); Conley v. City of Lincoln City, No. 02-cv-216-AS, 2004 WL 948427, at *13 (D. Or. Apr. 20, 2004) (collecting cases). Under Title VII, former employees can bring post-employment retaliation claims against their former employer if the action is related to or arises out of the employment relationship. Hashimoto v. Dalton, 118 F.3d 671, 675 (9th Cir. 1997); see also Robinson v. Shell Oil Co., 519 U.S. 337, 345 (1997) (holding that post-employment retaliation against a former employee for filing an equal employment complaint is actionable under Title

VII). Accordingly, the Court finds that Hoy can invoke the protections of the statute for retaliatory actions that occurred after his employment with YCSO was terminated.

      To establish a prima facie case of retaliation under ORS 659A.230, Hoy must show 1) he was engaged in a protected activity, 2) he suffered an adverse employment action, and 3) a causal link between the protected activity and the adverse employment decision. Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ., 927 F. Supp. 2d 1030, 1061 (D. Or. 2012) (citing Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000)).

      There is no dispute that Hoy was engaged in a protected activity when he filed his lawsuit because that activity falls squarely within the terms of the statute.

      The causation element requires Hoy to produce evidence "sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." Siring, 927 F. Supp. 2d at 1063 (D. Or. 2012) (quoting Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982)). A prima facie showing of causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory [activity]." Id. (quoting Yartzoff, 809 F.2d 1371, 1376 (9th Cir. 1987)).

      Hoy alleges that he notified Defendants of his intent to bring tort claims against them in November of 2011, and he filed this lawsuit in July of 2013. The first alleged retaliatory action occurred in January of 2014, when Hoy claims Defendants testified under oath in a manner that reflected negatively on his reputation for veracity and was "directly contradictory" to statements made to him previously. First Amd. Compl. at ¶ 117; Pl. Resp. at 38. The approximately six months that elapsed between Hoy's lawsuit and the testimony of Defendants Sanai, Fetters, and Crabtree is too attenuated to infer a causal connection, and Hoy does not offer any analysis to the

contrary. Moreover, Hoy cites no authority for the rather extraordinary implication of his argument: that giving truthful testimony under oath in a court proceeding could be considered an "adverse employment action" simply because that testimony casts the employee in a poor light.

As for Hoy's assertion that Defendants made "voluntary statements to members of the criminal defense bar," the Court restates its finding that the portions of the record Hoy cites simply do not support his claim. Therefore, Defendants' motion for summary judgment on Hoy's seventh claim for relief is granted as well.

                                           ORDER

For the reasons stated, the court GRANTS Defendants' motion for summary judgment on all of Hoy's claims

IT IS SO ORDERED

Dated this _____ day of _____, 2015.

MARCO A. HERNÁNDEZ
United States District Judge

OPINION & ORDER - 33